## RECKNAGEL *v.* MURPHY.

Certain articles were imported by A. from Liverpool, Nov. 14, 1871, upon which the collector of the port of New York exacted the duty of six cents per pound, imposed by sect. 5 of the act of July 14, 1862 (12 Stat. 547), upon "argols or crude tartar." A. claimed that they were "argols crude," and, as such, were, by sect. 22 of the act of July 14, 1870 (16 id. 266), exempt from duty. A. paid the duty under protest, and brought suit against the collector to recover it. The court instructed the jury that it was for them to determine from the evidence whether the argols in question were "argols crude," then known as such to commerce or to science, or whether they were argols that were more or less refined. *Held*, that the instruction was proper, and covered the entire ground of the controversy.

ERROR to the Circuit Court of the United States for the Southern District of New York.

This was a suit brought against Murphy, then collector of customs at the port of New York, by Recknagel & Co., to recover the amount of certain duties which they paid to him under the following protest: —

"NEW YORK, Dec. 27, 1871.

"SIR, — We protest against the assessment of duty at six cents per lb. upon the argols imported by us in the city of New York from Liverpool, and entered for consumption Nov. 14, 1871, because the act of July 14, 1862, sect. 5, as far as it relates to argols or crude tartar, is repealed by the act of July 14, 1870, sect. 22. We pay under duress to get our goods.

"RECKNAGEL & CO.

"COLLECTOR OF CUSTOMS,
        "New York City."

Judgment was rendered for the defendant. The plaintiffs' sued out this writ of error.

The facts are stated in the opinion of the court.

*Mr. William J Stanley* and *Mr. Stephen G. Clarke* for the plaintiffs in error.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The subject to which the controversy relates is an article known in commerce as argols.

Sect. 5 of the act of Congress of July 14, 1862 (12 Stat. 547), imposed upon " argols or crude tartar " a duty of " six cents per pound."

Sect. 22 of the act of July 14, 1870 (16 Stat. 266), exempted " argols crude " wholly from duty, by putting the article in the free list created by that act.

Both these acts were in force when the importations in question were made.

The controversy between the parties therefore narrows itself down to the question whether the argols of the plaintiffs upon which the duties complained of were exacted and paid were " argols crude " or not. If crude, they were not dutiable, and the plaintiffs were entitled to recover; otherwise, the defendant was entitled to a verdict in his favor.

The subject was a proper one to be enlightened by evidence and passed upon by the jury. Both were done, and a verdict and judgment for the defendant was the result.

When wine ferments, certain deposits cling to the sides or fall to the bottom of the casks. These deposits are mingled with a variety of impurities, such as glucose, leaves, sticks and particles of dust, silicate and other like things. By washing in cold water, these impurities are removed and the crude tartar is left free from their presence. The effect of the cold water is mechanical. When boiling water is applied sufficiently, crystallization and re-crystallization take place, and the product is the cream of tartar of medicine and commerce. There is refinement in the latter case, but no chemical change is wrought. Argols are used also for making tartaric acid, Rochelle salts, the preparation of tartrate of antimony, and potash called tartar emetic, as a mordant in dyeing, and for other purposes. Argols and *crude tartar* are synonyms. The phrases are used convertibly by those who deal in the article.

The lexical definition of *crude* is: " In its natural state; not cooked or prepared by fire or heat; undressed; not altered, refined, or prepared for use by any artificial process; raw." See Webster's Dic.

Upon the trial the plaintiffs produced and identified samples of argols of the several importations upon which the duties were paid, and gave proof tending to support their case. The

defendant then gave proof tending to maintain the claim of the government. The testimony of the witnesses on both sides is set out at length in the bill of exceptions. That paper then proceeds : " A large number of witnesses were called by the defendant from the trade and from among the manufactures of cream of tartar, and dealers and others, whose testimony tended to prove that there was an article of commerce and importation unlike the plaintiffs' samples which was in fact ' crude argols ; ' that the plaintiffs' samples exhibited at the trial were not ' crude argols ; ' that said samples differed from ' crude argols,' &c. . . . These witnesses also testified uniformly that plaintiffs' samples were refined argols, and in that there was a difference between them and crude argols, &c. . . . Samples of ' crude argols ' were exhibited which differed as above stated from those exhibited by the plaintiffs. Also, that there was a difference between crude argols and the lees of wine, and that all these differences were well understood by the trade and by manufacturers."

The court, after recapitulating with entire fairness the substance of the testimony, said to the jury : " The only question for you to determine is whether these argols were ' argols crude,' those known to commerce as such or those known to science as such, or whether they were argols that were more or less refined."

This instruction was clear and accurate, and it covered the entire ground of the controversy. Nothing more was necessary to be said. No amount of verbiage would have improved it, The jury could have no difficulty in applying it intelligently to the facts before them.

They knew from the evidence that if there were no substantial change in the condition of the argols, as they were when they came from the wine cask, they were *crude*. On the other hand, if there were such change wrought by a process to which the argols were subjected, they lost their identity, and took their place in a new and different category. According to the nomenclature of commerce, they ceased to be *crude*, and became refined. They could not be both at the same time. The measure of refinement was of no consequence, provided it was sufficient to be material. The elaborate brief submitted for the

government shows that, in the customs laws passed from time to time by Congress, exact analogies to the case in hand have constantly occurred and are numerous. It is unnecessary particularly to advert to them.

In cases like this, the law recognizes the authority of those engaged in commerce, and adopts, necessarily and as conclusive, the meaning which they have given to words and phrases employed in their daily business.

It is needless to notice specifically the several assignments of error. They relate to the instruction given, and to several asked by the counsel for the plaintiffs and refused by the court. As regards the former, we have expressed our approval.

If the latter were in conflict with it, they were properly refused for that reason.

Conceding that they were correct, the instruction given was sufficient for the case. Nothing more could, therefore, be required of the court. *National Bank* v. *Burkhardt*, 100 U. S. 686. .

*Judgment affirmed.*