UNITED STATES *v.* RICE CO. ET AL (No. 1959).   RICE CO. ET AL. *v.* UNITED STATES (No. 1961).[1]

1. JUDGMENT, CONTENT OF—EVIDENCE, FINDING OF FACT.

A final decision by a court upon a general issue in controversy implies a consistent finding by the court upon all preliminary or partial issues comprehended therein. In the absence of a special finding to the contrary, it is to be assumed that all questions involved in the general issue were considered by the court and were decided in such a way as would sustain the general decision in the case.

2. EVIDENCE, SUFFICIENCY OF.

The issue being whether or not certain wheat stems with heads on were sun bleached, testimony by Government chemists that they contained a certain percentage of a chemical bleaching agent and that sun-bleached wheat usually contained a much smaller percentage or none at all is not sufficient to overcome the finding of the Board of United States General Appraisers supported by testimony that they were sun bleached, by the admission of one of the Government chemists that they were identical in appearance with sun-bleached wheat, by the testimony of the importers contrasting the appearance of chemically bleached wheat with that of the merchandise in controversy, and by testimony that some chemical powder is sprinkled upon such wheat when sun bleached in order to protect it from insects during shipment.

3. WHEAT, BLEACHED.

Natural sun-bleached wheat stems and heads tied into small bundles for use as semifloral ornaments or emblems are admissible free of duty under paragraph 552, tariff act of 1913, as crude or unmanufactured vegetable substances, or under paragraph 497 as textile grasses or fibers, and are not dutiable under paragraph 385 as nonenumerated manufactured articles.

## United States Court of Customs Appeals, April 15, 1919.

CROSS appeals from Board of United States General Appraisers, Abstract 42759.

[Modified.]

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) contra.

[Oral argument Mar. 28, 1919, by Mr. Mulvaney and Mr. Tompkins.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present merchandise consists of bundles of dried stems or straws of ripened wheat, with heads intact. The straws are about 2 feet 6 inches in length and have the usual yellow color of a harvest wheat field. The bundles are about an inch in diameter and are used as emblems or ornaments at funerals or other occasions.

The articles came from Italy and were invoiced as "natural sun-bleached wheat." They were assessed with duty at the rate of 15 per cent ad valorem as nonenumerated manufactured articles under paragraph 385 of the tariff act of 1913.

The importers protested against the assessment, claiming free entry of the goods as wheat under paragraph 644, or alternatively

---

[1] T. D. 37998 (36 Treas. Dec., 387).

as a vegetable substance crude or unmanufactured and not otherwise specially provided for under paragraph 552, or as grasses and fibers or fibrous vegetable substances, not dressed or manufactured in any manner and not specially provided for, under paragraph 497, or dutiable at only 10 per cent ad valorem as a nonenumerated raw or unmanufactured article under paragraph 385 of the act.

The Board of General Appraisers tried the case with witnesses and held the merchandise to be a nonenumerated unmanufactured article, dutiable at the rate of 10 per cent ad valorem under paragraph 385, thereby at the same time reversing the collector's assessment of the article and overruling the importers' claim for the free entry thereof. Cross appeals were taken by the Government and the importers, respectively, from this decision, and the combined issues are now presented to the court by the present record.

The following is a copy of the paragraphs above cited:

(Dutiable list.)

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

(Free list.)

497. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal grass, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for in this section.

552. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not otherwise specially provided for in this section.

644. Wheat, wheat flour, semolina, and other wheat products, not specially provided for in this section: *Provided,* That wheat shall be subject to a duty of 10 cents per bushel, that wheat flour shall be subject to a duty of 45 cents per barrel of 196 pounds, and semolina and other products of wheat, not specially provided for in this section, 10 per centum ad valorem, when imported directly or indirectly from a country, dependency, or other subdivision of government which imposes a duty on wheat or wheat flour or semolina imported from the United States.

The first question which arose at the trial was one of fact, namely, whether the wheat in question was simply sun bleached, as stated in the invoice, or had been artificially bleached by means of chemical agencies. The importers maintained the former branch of the alternative, while the Government averred and undertook to prove that the bleaching of the wheat had been effected by means of sulphur dioxide, which is a powerful chemical bleaching agent.

Testimony was submitted upon both sides on this very important issue in the case. In its decision the board does not explicitly and definitely pass upon the question, but according to our interpretation the decision impliedly holds thereon with the importers. This we understand to be also the view of the Government's counsel, for in their brief they say:

The opinion of the board is silent, so far as a finding of fact is concerned, upon the question whether the article was bleached in the sun or was chemically treated, the

opinion merely stating that the merchandise was "invoiced as 'natural sun-bleached wheat.'" It is therefore merely matter of inference that the board may have found that the bleaching resulted fron the operation of natural forces.

It may be accepted as axiomatic that a final decision by a court upon a general issue in controversy implies a consistent finding by the court upon all preliminary or partial issues comprehended therein, where no special mention is made thereof in the decision at large. In other words it is to be assumed in such a case, in the absence of a special finding to the contrary, that all questions involved in the general issue were considered by the court, and were decided in such a way as would sustain the general decision in the case. In line with this rule we conclude that the board held upon the evidence that the invoice description of the merchandise as "natural sun-bleached wheat" was correct.

Upon a review of the testimony we think that this decision is not unsustained by the evidence, nor is it clearly against the weight and value thereof. It is true that the Government chemists testified that they had found in the body of the wheat stems and heads a certain percentage of sulphur dioxide, whereas according to their testimony natural sun-dried wheat usually contains a much lesser percentage thereof, or none at all. But on the other hand the percentage thus found was actually slight, and one of the chemists, Mr. McSorley, testified that he had seen natural sun-bleached wheat, and that it was "identical" in appearance with that in controversy. The fact that the wheat in question so perfectly resembles natural sun-dried wheat is certainly very significant upon the question whether that appearance was produced by natural or artificial means. It is also stated by witnesses that a small quantity of some chemical powder is sprinkled upon such wheat when sun bleached in order to protect it from insects during shipment. This fact may account to some extent at least for the presence of a chemical preservative in the importation. These statements, taken in connection with the detailed explanations of the importers, Mr. Neidinger and Mr. Eschner, contrasting the appearance and condition of chemically bleached wheat when imported with that of the present importations, and explaining the methods pursued in bringing sun-dried wheat to a state like that of the present merchandise, lead us to the conclusion that the board's decision upon the facts should not be disturbed.

The question therefore finally calls for the proper classification of natural sun-bleached wheat stems and heads tied into small bundles for use as semifloral ornaments or emblems. We think that the great weight of the authorities favors the free entry of such articles, sometimes classifying them as crude or unmanufactured vegetable substances under paragraph 552, supra, or its predecessors, and sometimes as textile grasses or fibers or fibrous substances under

paragraph 497, supra, or its predecessors. An unusually clear legislative acquiescence in the result of these cases may be inferred from the history of the subject. See Donant v. Erhardt, on dried Brizza grasses (T. D. 10073); Donat & Co., on sun-dried wheat (T. D. 17150); Donat & Co., on sun-bleached wheat stems and heads intended for funeral decorations (T. D. 19255); Donat & Co., on stems and heads of wheat or straw, sun-bleached, intended for funeral decorations (T. D. 22265); United States v. Richard, on natural grass, sun-bleached, used for emblems (99 Fed., 262); acquiescence of Department (T. D. 21984); Bayersdorfer & Co. v. United States, bleached stems and heads (122 Fed., 968).

These cases were cited and followed by this court in the case of United States v. Post & Co. (3 Ct. Cust. Appls., 260; T. D. 32568), the merchandise therein being sun-dried stypa grass and avoine, which is a species of oats. These were held to be entitled to free entry as textile grasses or fibers under paragraph 578, tariff act of 1909. In that case Judge Smith, speaking for the court, said:

We now come to the consideration of the claim of the importers that the goods are entitled to free entry, and as to that we do not hesitate to say that if it were an original proposition we should have considerable reserve in declaring that sun-dried grasses such as those imported are textile grasses or fibers or other vegetable substances within the meaning of either of the paragraphs relied upon by the importers. We are confronted, however, by the very significant fact that for more than 20 years sun-dried grasses, and even grains, have been uniformly held by the Board of General Appraisers to be covered by a free-list provision for grasses and fibers which has appeared substantially in the same form in every tariff act from 1890 to date. See tariff act of 1890 (pars. 592, 594, 596, 597); tariff act of 1894 (par. 497); tariff act of 1897 (par. 566); tariff act of 1909 (par. 578).

See also Hopkins case (T. D. 23665); Simpson v. United States (2 Ct. Cust. Appls., 222; T. D. 31952); United States v. Wallace (4 Ct. Cust. Appls., 142; T. D. 33413); Hartranft v. Wiegmann (121 U. S., 609).

The decision of the board is affirmed insofar as it reverses the collector's assessment, but is reversed insofar as it holds the merchandise to be dutiable, the importation being entitled to free entry as above set out.

*Modified.*