## UNITED STATES v. BERNARD, JUDAE & Co. (No. 2570) [1]

1. CONSTRUCTION, ESTABLISHED PRACTICE.

Uniformity in the construction of tariff statutes, both in judicial decision and in administrative practice, is of great importance to the commerce of the country. Therefore, a suggested construction of a statute, even if technically more correct than that placed upon it in prior decisions of this court acquiesced in by Congress in successive tariff acts, which would result in changing a long-continued and well-established tariff status of an article, ought not to be indulged unless required by legislative authority plainly expressed. *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941.

2. DRIED RUSCUS AND WHEAT—"CHEMICALLY TREATED"—"ARTIFICIAL OR ORNAMENTAL"—PARAGRAPH 1419, TARIFF ACT OF 1922.

The finding of the Board of United States General Appraisers that the dried ruscus and wheat plants at bar, stipulated to be the same as those in *United States* v. *Rice Co. et al.*, 9 Ct. Cust. Appls. 165, T. D. 37998, and *United States* v. *Bayersdorfer & Co.*, 12 Ct. Cust. Appls. 377, T. D. 40542, are not "chemically treated" within paragraph 1419, Tariff Act of 1922, is affirmed. Constrained by consistent administrative and judicial precedents since 1890 granting free entry to such merchandise, the judgment of the board that it is entitled to free entry under the provision of paragraph 1582 for "all other textile grasses or fibrous vegetable substances," and not dutiable under the provision of paragraph 1419 for "artificial or ornamental * * * grains, leaves," etc., is affirmed.

### United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, Abstract 48789

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Reuben Wilson*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument October 6, 1925, by Mr. Hoppin and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of natural ruscus leaves and natural wheat stems and heads. It was assessed for duty by the collector at 60 per centum ad valorem under the following provisions of paragraph 1419 of the Tariff Act of 1922:

PAR. 1419. * * * natural leaves, plants, shrubs, herbs, trees, and parts thereof, chemically treated, colored, dyed or painted, not specially provided for, 60 per centum ad valorem; * * *.

---

[1] T. D. 41346.

The importers protested the collector's classification, claiming that the imported merchandise was free of duty under paragraph 1582 of the Tariff Act of 1922, which reads as follows:

PAR. 1582. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal, henequen, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

The case was submitted to the Board of General Appraisers on the following stipulation:

In the matter of protests Nos. 978501, 981669, 992374, 6002–G, 24687–G, 25785–G, 42538–G, 44037–G, and 53568–G of Bernard, Judae & Company on natural sun-bleached ruscus and wheat.

It is hereby stipulated and agreed by and between counsel for the importers and Assistant Attorney General for the United States that the merchandise covered by the protests above-named consists of natural ruscus and natural wheat of the same kind as that involved in *United States* v. *Bayersdorfer & Company*, suit #2445, T. D. 40542, and *United States* v. *Rice Co. et al.*, suit #1959, and *Rice Co. et al.*, v. *United States*, suit #1961, T. D. 37998, and that the records in said suits 2445, 1959, and 1961 (T. D. 40542 and T. D. 37998) may be and hereby are incorporated as a part of the record in these cases.

It is further stipulated and agreed, subject to reservation by either party of objections as to the materiality and competency, that Treasury attaché's report dated December 1, 1919, herewith attached, and Exhibit B for identification on protest 970815, also herewith attached, may be and hereby are incorporated as part of the record in these cases.

The protests above named are submitted for decision upon this stipulation and on the record as thus made up, including all the papers in the case.

Dated, January 10, 1925.

The report of the Treasury attaché, referred to in the quoted stipulation, relates to a conversation had in Italy, some time during the month of October or November, 1919, by the attaché, with one Oreste Talini, of Lamporecchio, Italy, concerning the production of merchandise like that involved in this case.

With reference to sun-bleached wheat the pertinent part of the report is as follows:

\* \* \* the wheat is cut in the summer, beginning June–July and ending July–August, according to season; that the farmers leave the wheat on the soil for a period of a few days; that during this period the effect of the night and early morning dew and the sun's rays during the day bleaches the wheat, the wheat being moved about sufficiently to expose its surface thoroughly to the action of the atmosphere.

Mr. Talini further stated that the cutting and bleaching of the wheat are done between June and August; that he purchases this wheat all bleached from the farmers throughout the entire year; that the wheat as bought from the farmers comes in various lengths and qualities; and that in order to assort the grades and qualities and equalize the lengths it is necessary to dampen the wheat and expose it to sulphur fumes during one night; and that from one to two kilos of sulphur are usually required for a quantity of 2,000 to 3,000 kilos of wheat.

Mr. Talini further stated the sulphur fumes render the wheat flexible and re-sistant at the same time; and that without the sulphur it would not be possible to assort and equalize the wheat, as it would crack and break.

Mr. Talini claimed that the action of the sulphur does not influence the color of the wheat as purchased from the farmers.

With reference to sun-bleached ruscus the report is as follows:

### SUN-BLEACHED RUSCUS

The scientific denomination of the above is "ruscus aculeatus."

In reply to my questions relative to the growth, cutting, preparation, and bleaching of "sun-bleached ruscus," Mr. Talini stated that ruscus is grown by many farmers near Pistoia; that ruscus may be cut throughout the entire year; that ruscus is cut in the early morning when the dew is heavy, and after it is cut it is exposed to sulphur fumes for 12–15 hours; that from one to two kilos of sulphur are required for a quantity of 2,000–3,000 kilos of ruscus; that when the ruscus is cut it is white or light brown in color, according to quality; that unless the cut ruscus be subjected to the action of the sulphur fumes it would soon turn black; and that the sulphur is indispensable for preserving the cut ruscus white or brown in color.

Mr. Talini further stated that another effect of the sulphur fumes on the ruscus is to render both stems and leaves flexible so that it can be pressed and prepared for export.

Mr. Talini claimed that if the farmers instead of cutting the ruscus early in the morning when it is wet with dew waited until the afternoon when the ruscus is dry no sulphur fumes would be required for preserving the ruscus white or brown in color, but the effect of the sun's rays are not as uniform or satisfactory as the sulphur fumes, and for this reason the artificial way is preferred. However, Mr. Talini stated, as sulphur is required to render the ruscus flexible for commercial purposes the cutting is done early in the morning, following which it is subjected to sulphur fumes as explained above.

I obtained from Mr. Talini a sample of ruscus which is enclosed herewith. Sample marked Exhibit No. 3, Mr. Talini stated, is ruscus which has been sub-jected to the action of sulphur fumes. Mr. Talini stated that he was unable to give me a sample of "sun-bleached ruscus" which had not been exposed to the action of sulphur fumes, for the reason that all the ruscus which he handles is so exposed to such sulphur fumes after being cut, as explained above.

From an examination of the several invoices in the record it appears that the imported merchandise was purchased from Oreste Talini & Co., Lamporecchio, Italy, and imported into the United States during the years 1923 and 1924.

The affidavit concerning the production of sun-bleached ruscus and referred to in the stipulation as "Exhibit B for identification in protest 970815," is as follows:

### Affidavit, re ruscus (aculeatus bleached)

In accordance to the desire of our American customers we beg to inform in the following the customhouse of the United States of America that ruscus is not bleached with any chemical products or acidities.

The fresh ruscus is cut during its growth. The ruscus twigs are spread out in the fields in the evening. During the nights the branches are wetted by the dew. The sun shining on the wet branches destroys the chlorophyl (the green

color in the plants), and in this manner they become bleached. From time to time these fields are bespattered with hydrants in order to accelerate the bleaching. Of course, the old branches do not become so white and pure as the young ones; consequently result three qualities, called by us: EEE—first quality; E, Ia—second quality; and Ia—third quality.

The chemical bleaching of the ruscus would not only require extent establishments, but the foliage ought to be destroyed by the acidities. Further, the chemical preparation would make unfit the ruscus for the pale colors.

In order that the ruscus is not damaged by mice and rats, in order to avoid the different vermin, as lice, fleas, ants, gnats, etc., cause prejudice, further in order that he does not become mildewed and putrid, there is joined some sulphur, because the ruscus is pressed in bales while he is wet. We wish to point out that the admixture of sulphur is a hygienic precautionary measure against infectious sickness.

This method of bleaching can easily be proved with every ruscus branch, if it is a young branch. Of course, the bleaching must be done with the great in July–September. We beg to remark that linen cloths are bleached in the same manner.

Respectfully,

(Signed)  "LAURUS S. A." CHIASSO.

P. LIVIO, *Director.*

In sustaining the protests, the Board of General Appraisers in an opinion by Judge McClelland, said:

It appears that the ruscus and wheat involved are similar in character to the ruscus and wheat which were involved in *Rice Company et al.* (T. D. 37998) and *United States* v. *Bayersdorfer* (T. D. 40542), and following the rulings in these cases we sustain the protest claims for free entry and reverse the decision of the collector in each case.

It is claimed by the Government that the merchandise has been chemically treated, and is, therefore, properly dutiable under paragraph 1419, *supra*, at 60 per centum ad valorem, as "natural leaves, plants, shrubs, herbs, * * * and parts thereof, chemically treated;" that, if it is not included within those provisions, it is, nevertheless, properly dutiable at the same rate of duty under the following provisions of the same paragraph:

PAR. 1419. * * * artificial or ornamental feathers suitable for use as millinery ornaments, artificial *or ornamental* fruits, vegetables, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for, * * *. (Italics ours.)

Our attention has been called to the fact that paragraph 443 of the tariff act of 1890, provided for "* * * artificial *and* ornamental feathers and flowers, or parts thereof, of whatever material composed;" that paragraph 328 of the tariff act of 1894, provided for "* * * artificial *and* ornamental feathers, fruits, grains, leaves, flowers, and stems, or parts thereof, of whatever material composed;" that paragraph 425 of the tariff act of 1897, provided for "* * * artificial *or* ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed;" that para-

graph 438 of the tariff act of 1909, provided for "* * * artificial *or* ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed;" and that paragraph 347 of the tariff act of 1913, provided for "* * * artificial *and* ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed." (Italics ours.)

It is argued by the Government that the words "artificial *and* ornamental" in paragraph 347 of the act of 1913, were changed to "artificial *or* ornamental" in paragraph 1419, *supra*, in order to meet the decision of this court in *Bayersdorfer* v. *United States*, 7 Ct. Cust. Appls. 66, T. D. 36390, that dried and dyed immortelles were not dutiable as "artificial *and* ornamental flowers," because they were not both artificial and ornamental; that the provisions of 1419, *supra*, should receive the same interpretation as the provision for artificial *or* ornamental feathers, fruits, grains, leaves, and flowers, contained in paragraph 438 of the tariff act of 1909, and as the wheat and ruscus are ornamental "grains" and "leaves" respectively, they are properly dutiable as such articles under paragraph 1419, *supra*. (Italics ours.)

It is agreed by the parties that the merchandise involved in this case is identical with that considered in *United States* v. *Rice Co. et al.*, 9 Ct. Cust. Appls. 165, T. D. 37998, and in *United States* v. *Bayersdorfer & Co.*, 12 Ct. Cust. Appls. 377, T. D. 40542.

The merchandise under consideration in *United States* v. *Rice*, *supra*, consisted of sun-bleached wheat stems and heads imported in small bundles for use as emblems or ornaments. Upon the record in that case, which is incorporated as a part of the record in the case at bar, this court, in an opinion by Martin, Judge, held that the merchandise in question had not been chemically treated and that it was free of duty under paragraph 552 of the tariff act of 1913, as crude or unmanufactured vegetable substances, or as textile grasses or fibers under paragraph 497 of that act. The decision was in part based upon legislative recognition of long continued administrative practice and judicial construction. Many decisions of this court and of the Board of General Appraisers are cited in the opinion and the court quoted with approval the following excerpt from the opinion of Smith, Judge, in *United States* v. *Post & Co.*, 3 Ct. Cust. Appls. 260, T. D. 32568:

We now come to the consideration of the claim of the importers that the goods are entitled to free entry, and as to that we do not hesitate to say that if it were an original proposition we should have considerable reserve in declaring that sun-dried grasses such as those imported are textile grasses or fibers or other vegetable substances within the meaning of either of the paragraphs relied upon by the importers. We are confronted, however, by the very significant fact that for more than 20 years sun-dried grasses, and even grains, have been uniformly held by the Board of General Appraisers to be covered by a free-list provision for grasses and fibers which has appeared substantially in the same

form in every tariff act from 1890 to date. See tariff act of 1890 (pars. 592, 594, 596, 597); tariff act of 1894 (par. 497); tariff act of 1897 (par. 566); tariff act of 1909 (par. 578).

In the case of *United States* v. *Bayersdorfer, supra,* the court had under consideration natural sun-bleached ruscus leaves, and in an opinion by Bland, Judge, said:

> The testimony, in our judgment, conclusively shows that the ruscus leaves are part of a plant that grows in the field like wheat and that they are cut, sun bleached, and dried, and that some form of sulphur is applied as a disinfectant; that it is not applied for the purpose of bleaching or preserving. The witnesses are in agreement that the merchandise could not be used for the purpose for which it is used if it had been chemically bleached prior to importation; that the grass was "too fragile," "too soft," and "too brittle" to withstand chemical treatment. The testimony is undisputed that a chemical bleaching would destroy the outer skin of the leaves * * *.
>
> Were it not for the decision in the Rice case, *supra,* and the long line of decisions upon which it is based, we would be inclined to agree with the second contention of the importer (rather than the first), that the merchandise should be assessed as a nonenumerated unmanufactured article. But it seems to us that having found that the goods were not "chemically treated" within the meaning of paragraph 1419 we are compelled to hold the merchandise classifiable under paragraph 1582, which provides for grasses and fibers. While we realize the merchandise at hand does not possess the fibrous qualities which seem to characterize all of the grasses and fibers listed in the paragraph, it must fall within that paragraph by virtue of long administrative practice and judicial precedent * * *.
>
> Agreeable to the decision in the Rice case, *supra,* and the cases therein cited, we hold that the merchandise at bar should have been classified under the free list of paragraph 1582.

The first question which requires our consideration is whether the statements contained in the report of the Treasury attaché are of sufficient probative force, when considered with the evidence upon which the Rice and Bayersdorfer cases, *supra,* were decided, together with the affidavit filed in this case, to establish that the merchandise now under consideration was so processed as to bring it within the provisions of paragraph 1419, *supra,* as "natural leaves, plants, shrubs, herbs, trees, and parts thereof, *chemically* treated." (Italics ours.) The board does not specially refer in its decision to either the report of the attaché or to the affidavit filed in the case. However, we assume that both were considered by the board in reaching its conclusion, as no objection was made to the relevancy or competency of either document. Upon the record in the case, the court below held against the Government and in favor of the protestant, and as such decision was a final one upon all of the issues in the case, it necessarily implies a finding that the merchandise was not chemically treated. The evidence was conflicting upon this question, and we are unable to say that the decision of the board is not supported by the evidence in the case.

In consideration of the second proposition submitted by the Government that, if the merchandise has not been chemically treated, it is, nevertheless, properly dutiable at 60 per centum ad valorem under paragraph 1419, *supra*, as artificial or *ornamental* grains or leaves, and stems or parts thereof, of whatever material composed, we are confronted with the fact that since 1890, natural sun-bleached grains and grasses have been held by the courts to be free of duty under free list provisions which have not been materially changed in the successive tariff acts from the act of 1890 to and including the Tariff Act of 1922. This question was fully considered in the case of *United States* v. *Post, supra*, decided May 17, 1912, and also in *United States* v. *Rice et al., supra*, decided April 15, 1919, and again in *United States* v. *Bayersdorfer & Co., supra*, decided November 28, 1924; furthermore, in the last two cited cases this court had under consideration merchandise identical with that in this case. In each instance the merchandise was held to be entitled to free entry, and each decision was based upon legislative recognition and adoption of judicial construction and of long continued administrative practice. It will be observed that in the case of *United States* v. *Post, supra*, the court was considering the provisions of the tariff act of 1909. Paragraph 438 of that act contained a provision for artificial *or* ornamental grains and leaves, "of whatever material composed." In the case of *United States* v. *Rice, supra*, the court had under consideration the provisions of the tariff act of 1913. Paragraph 347 of that act provided for artificial *and* ornamental grains and leaves "of whatever material composed." In the case of *Bayersdorfer* v. *United States, supra*, the provisions of the Tariff Act of 1922 were involved. It is now claimed by the Government that the merchandise is properly dutiable under the provisions of paragraph 1419 of this act, for artificial *or* ornamental grains and leaves, "of whatever material composed." It may be that such language is sufficiently comprehensive to include within its terms sun-bleached wheat and sun-bleached ruscus, but it is no more descriptive of this merchandise than the language contained in paragraph 438 of the Tariff Act of 1909. Uniformity in construction of tariff statutes both in judicial decision and in administrative practice is of great importance to the commerce of the country. Therefore, a suggested construction of a statute, even if technically more correct than that placed upon it in prior decisions of this court acquiesced in by Congress in successive tariff acts, which would result in changing a long continued and well established tariff status of an article, ought not to be indulged unless required by legislative authority plainly expressed. *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941.

It must be presumed, in a fair consideration of the issues of this case, that the decisions of the courts and the long continued administrative practice of admitting the involved merchandise free of duty was known to Congress at the time of the enactment of the Tariff Act of 1922.

Therefore, had it been intended that these articles should be classified as ornamental grains or leaves at 60 per centum ad valorem under paragraph 1419, *supra*, it is fair to assume that in writing the involved provisions Congress would not have used the language of paragraph 438 of the Tariff Act of 1909, but on the contrary would have chosen language more clearly expressive of such purpose.

For the reasons stated the judgment is *affirmed.*