For the reasons stated, the judgment is *affirmed.*

FYNAUT & POPEK *v.* UNITED STATES (No. 3878)[1]

United States Court of Customs and Patent Appeals, January 6, 1936

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*William Whynman* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument December 3, 1935, by Mr. Barnes and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal brings before us for review a judgment of the United States Customs Court, Third Division, overruling the protest of

---

[1] T. D. 48112.

appellants against the classification by the collector at the port of New York of certain merchandise as vegetables in their natural state, under paragraph 774 of the Tariff Act of 1930, and its assessment with duty by him at the rate of 50 per centum ad valorem. Said protest claimed that said merchandise was dutiable under paragraph 776 of said act at 2 cents per pound as "chicory, crude."

The pertinent provisions of the competing paragraphs read as follows:

PAR. 774. Vegetables in their natural state: Peppers, 3 cents per pound; eggplant, 3 cents per pound; cucumbers, 3 cents per pound; squash, celery, lettuce, and cabbage, 2 cents per pound; crude horseradish, 3 cents per pound; all other, not specially provided for, 50 per centum ad valorem * * *.

PAR. 776. Acorns, and dandelion roots, crude, 1½ cents per pound; chicory, crude, 2 cents per pound; any of the foregoing, ground, or otherwise prepared, 4 cents per pound; all coffee substitutes and adulterants, and coffee essences, 3 cents per pound.

It is conceded that the merchandise here involved is identical in character with that involved in the case of *United States* v. *The Hothouse Products Corp. et al.*, 21 C. C. P. A. (Customs) 261, T. D. 46789. In that case the merchandise involved was considered by the parties to b̃e endives, and the only question in issue was whether the merchandise was classifiable under paragraph 774 as vegetables in their natural state or under paragraph 775 as vegetables "cut, sliced, or otherwise reduced in size."

In the case at bar the claim is made for the first time before this court that the merchandise involved is not in fact endives, but chicory, and classifiable as "chicory, crude" under said paragraph 776.

It is conceded that, under our decision in the case last above cited, the merchandise here involved is in its natural state, but the Government contends that it is not chicory within the meaning of that word as used in said paragraph 776, and also contends that, if it is held to be chicory within such meaning, appellants did not establish upon the trial that it was "crude."

Upon the trial before the Customs Court both parties introduced testimony.

The testimony introduced on behalf of appellants was largely directed to the claim that the involved merchandise fell within the common meaning of the word "chicory." The testimony on behalf of the Government was directed mainly to its contention that the involved merchandise was ordinarily sold in the United States under the name of "endives," but it makes no claim that it has established commercial designation of the term "chicory" excluding the merchandise here in question from such designation. The Government also contends that, although scientifically the involved merchandise may be classified as chicory, it should not be so held for the reason that tariff acts are written in terms of commerce and not of science.

The Government also relies upon the legislative history respecting said paragraph 776 to show that Congress did not intend in its enactment to include merchandise of the character here involved within the provisions of said paragraph 776.

Upon the trial appellants offered in evidence certain catalogues of dealers in plants and seeds, which catalogues, it is claimed by them, tended to show that in commerce, as well as scientifically, the involved merchandise was known as chicory. Objection by the Government to this evidence was sustained by the trial court, and appellants assign error in its exclusion.

We think it is apparent from the decision of the trial court that it was of the opinion that the involved merchandise is, in fact, chicory, but that Congress, in the enactment of said paragraph 776, intended only to include chicory root within its provisions. In concluding the discussion of the case the trial court said:

Throughout the history of this paragraph it is clearly demonstrated that Congress was legislating concerning commodities used as coffee substitutes and that it had no intention of taxing any other class of commodity within that paragraph. The evidence in the instant case shows that the part of the chicory plant imported herein is used as a salad and not as a coffee substitute, while the root of the chicory plant is used as a coffee substitute. We are, therefore, forced to the conclusion that the chicory covered by the language involved in paragraph 776 refers only to that portion of the plant known as the root stock and which, when ground, is used as an adulterant for coffee.

We are satisfied that the involved merchandise falls within the common meaning of the word "chicory." It was so testified by a witness for appellants, one Henry Allen Gleason, a botanist and Head Curator, New York Botanical Garden. It is so described in standard works upon horticulture. In the decision of the trial court we find the following:

* * * It appears from the testimony of this witness [Gleason], supported by such scientific authority as the standard Cyclopedia of Horticulture by L. H. Bailey, that chicory or succory (Cichorium intybus) is a native of Europe naturalized in America and familiar to many as a weed, that is, a pot herb, a salad, and a leading adulterant of coffee. Reference to volume 2, page 746, of the last-cited work discloses a description of the plant and methods of culture and other data concerning the same. It is stated, among other things:

From a purely horticultural standpoint, chicory is of interest as a root, a pot-herb, and a salad plant. The young tender roots are occasionally boiled and served with butter, pepper, and salt, like young carrots, but they have never become widely popular in this form. As a pot-herb, the young leaves are equal to those of dandelion. They are cut when 6 to 8 inches long, boiled in two waters to remove the bitter flavor, and served like spinach. As a salad, chicory is famous in three forms: Common Blanched, Barbe de Capucin, and Witloof. Barbe de Capucin is comprised of small, blanched leaves. Witloof is a more solid head. The pink, red, and curled varieties make a very pretty appearance and if well grown and served fresh, are delicious, there being only a slightly bitter flavor. The method of growing for salads is the same as for endive.

We hold that the involved merchandise is, in fact, chicory, and in the absence of proof of commercial designation, we must hold that the

scientific and commercial meanings of the term "chicory" are the same.

However, the Government contends that, even though the involved merchandise be chicory in fact, it is not that form of chicory that Congress intended to include within the meaning of the word "chicory" as used in said paragraph 776. In support of this contention the Government relies upon its claim that all of the articles named in said paragraph 776 are coffee substitutes, and that, while chicory root is a coffee substitute, the portion of the plant constituting the involved merchandise is not such a substitute. The Government also relies upon the legislative history to establish that Congress intended to include only "chicory root" within the meaning of the word "chicory" as used in said paragraph 776.

It would seem that, in its contention that the involved merchandise is not a coffee substitute, the Government relies upon the rule of *noscitur a sociis* or *ejusdem generis*. The trial court apparently relied upon these rules of construction, together with the legislative history of the paragraph, for, as we interpret its opinion, it found, as we find, that the involved merchandise was, in fact, chicory.

Appellants vigorously contend that the words "chicory, crude" are plain and unambiguous, and invoke the familiar rule that rules of construction, and legislative history, may be resorted to only where the statute is ambiguous. In this contention they rely upon our decision in the case of *United States* v. *Downing & Co.*, 17 C. C. P. A. (Customs) 194, T. D. 43645, where we held that the word "tweezers," as used in paragraph 354 of the Tariff Act of 1922, was plain and unambiguous, and that resort to rules of construction, or to legislative history, was improper.

We see no distinction in principle between the case last cited and the case at bar. However, assuming, without deciding, that there is ambiguity in the use of the term "chicory" in said paragraph 776, and that rules of construction, and legislative history, may be resorted to, we would still be of the opinion that all forms of chicory, crude, fall within the provisions of said paragraph.

The predecessor of said paragraph 776 was paragraph 774 of the Tariff Act of 1922, which read as follows:

PAR. 774. Acorns, and chicory and dandelion roots, crude, 1½ cents per pound; ground, or otherwise prepared, 3 cents per pound; all coffee substitutes and adulterants, and coffee essences, 3 cents per pound.

The bill which later became the Tariff Act of 1930, as it passed the House of Representatives, contained the identical language last above quoted, and it was reported to the Senate by its Finance Committee in that form. However, upon the floor of the Senate, an amendment was made to the paragraph striking out the words "and chicory," and later in the paragraph inserting the words "chicory, crude, 2 cents per pound."

It will be observed that the effect of this amendment was to strike out the provision for chicory roots, crude, at 1½ cents per pound, and insert the provision "chicory, crude," without limitation, at 2 cents per pound.

It is a well-established rule of construction that, ordinarily, a change in the language of a statute imports a change in meaning unless the contrary is made plainly to appear in other ways. *United States v. American Brown Boveri Electric Corporation*, 17 C. C. P. A. (Customs) 329, T. D. 43776, and cases therein cited.

We find nothing in the legislative history that makes it plainly appear that this rule of construction is not applicable here, and we conclude that, by the elimination of "chicory * * * roots," and the addition of "chicory, crude," without limitation, Congress intended to broaden the paragraph to cover merchandise like that here involved if it is, in fact, crude.

The next question for determination is whether or not the chicory here involved is in fact "crude," within the meaning of that word as used in said paragraph 776.

That the chicory here involved is in its natural state is, in view of our decision in the *Hothouse Products* case, *supra*, conceded.

The meaning of the word "crude," as used in tariff laws, came before the United States Supreme Court in the case of *Recknagel v. Murphy*, 12 Otto 197; the question there involved was whether certain argols imported by appellant were free of duty as "argols crude," under section 22 of the act of July 14, 1870 (16 Stat. 266). The court said:

The lexical definition of *crude* is: "In its natural state; not cooked or prepared by fire or heat; undressed; not altered, refined, or prepared for use by any artificial process; raw." See Webster's Dic.

In the case of *Ishimitsu Co. v. United States*, 12 Ct. Cust. Appls. 477, T. D. 40672, the question involved was whether certain merchandise there in issue was a crude mineral substance. The court said:

* * * Crude implies that it is raw, unprepared or in its natural state. * * *

This court, however, has held that the term "crude," as used in tariff legislation, is a relative term, its meaning depending upon its use in the context. *United States v. Richard & Co.*, 8 Ct. Cust. Appls. 304, T. D. 37583; *United States v. Chili Products Corp.*, 23 C. C. P. A. (Customs) 209, T. D. 48052.

In accordance with the foregoing, we have repeatedly held that an article may be crude in a tariff sense, although it has undergone some processes advancing the article from its natural state, provided that such processes do not fit the article for its ultimate use. In the case of *Togasaki & Co. et al. v. United States*, 12 Ct. Cust. Appls. 463, T. D. 40667, this court said:

The word "crude," has been defined so many times by the courts as to require but little citation of authority here. It has been held to mean, when applied to the name of anything, that this thing, however much it may be processed, if, as

a matter of fact, it must go through some additional process of substantial preparation or manufacture in order to fit it for its chief or only use, is, so far as that use is concerned, a crude article. United States *v.* Danker & Marston (2 Ct. Cust. Appls. 522 [524]; T. D. 32251); United States *v.* American Chicle Co. (10 Ct. Cust. Appls. 98; T. D. 38360); United States *v.* Rice Co. (9 Ct. Cust. Appls. 165; T. D. 37998). * * *

It would appear from the decided cases that the meaning of the word "crude" has been somewhat enlarged from its common meaning as found in standard dictionaries, but we have found no case where the word has been given a *narrower* meaning than its ordinary common meaning. We find nothing in said paragraph 776 to lead us to conclude that Congress intended, in its enactment, that articles named therein, when in their natural state, should not be considered to be crude.

We are of the opinion that the merchandise here involved is chicory, crude, and should be classified under said paragraph 776 and assessed with duty at the rate of 2 cents per pound.

In view of the conclusion which we have reached, it is unnecessary for us to consider appellants' assignment of error with respect to the ruling of the trial court concerning the catalogues hereinbefore referred to.

The judgment of the United States Customs Court, Third Division, is *reversed* and the cause is *remanded* for further proceedings consistent with the views herein expressed.