(C. D. 810)

AMERICAN SMELTING & REFINING CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 16, 1943)

*James L. Gerry* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: The plaintiff imported from Monterrey, Mexico, and entered at the port of Omaha, Nebr., a shipment of merchandise invoiced as "3 bars of Impure Lead Bullion." It was classified by the collector as a combination of chemical elements under paragraph 5 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 5). This classification, protested by plaintiff, is now conceded to be improper by Government counsel in his brief. It seems fair to state that the rather strenuous support given such classification by the Commissioner of Customs was conceded to be incorrect because of the opinion of the Court of Customs and Patent Appeals, promulgated on June 10, 1943, in the case of *Quong Yuen Shing Co. v. United States*, C. A. D. 247, and that if this opinion had been before the Commissioner and he were afforded an opportunity to consider it, his position would likely have been different and in line with that now taken by counsel for defendant.

Plaintiff claims that the merchandise is either free of duty under paragraph 1664 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1201, par. 1664), as a metallic mineral substance, or dutiable under paragraph 392 of said act (19 U. S. C. 1940 ed. § 1001, par. 392), which provides for:

Lead bullion or *base bullion*, lead in pigs and bars, lead dross, reclaimed lead, scrap lead, antimonial lead, antimonial scrap lead, type metal, Babbitt metal, solder, all alloys or combinations of lead not specially provided for, 2⅛ cents per pound on the lead contained therein; * * * . [Italics ours.]

There is an alternative claim in the protest for classification under paragraph 1558 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1558), as unenumerated merchandise, and dutiable either at 10 per centum ad valorem as being unmanufactured or at 20 per centum ad valorem as a manufactured article.

The case is submitted upon a written stipulation setting forth the following facts:

1. That the merchandise covered by the protest consists of a lead-bismuth alloy, containing 30.8 % lead, 69 % bismuth and small quantities of arsenic, copper, gold, and silver. That it is wholly metallic and contains no mineralizer.

2. That the merchandise is a secondary furnace byproduct or residue, in a crude state, fit only for remanufacture, and has no commercial use in its condition as imported.

3. That in the normal course of refining at the Monterrey, Mexico, plant of American Smelting and Refining Co., lead bullion produced in a lead smelter is treated for the removal of gold, silver, antimony, and tin. The resulting metal is pumped into a kettle, where it is treated with calcium and magnesium for the removal of the bismuth. This bismuth is taken off in the form of dross, and the lead so debismuthized is cast into pigs for market. The bismuth dross is subjected to a treatment known as liquation in which the resultant products are a bismuth-calcium-lead dross, and a lead bullion low in bismuth. Said lead bullion is returned to process for subsequent debismuthizing. The high bismuth dross is then treated for the removal of the calcium, and the resulting product is a metal containing bismuth and lead. This metal is then further treated with chlorine which reacts with the lead content forming lead chloride (which is reused in the lead refining operations for the chlorine value) but which does not react with the bismuth. The resultant product is the imported material.

From 1926 to December 26, 1941, the merchandise was uniformly classified as an alloy of lead under par. 392 of the Tariff Act of 1930 (and comparable paragraphs of earlier tariff acts) at two and one-eighth cents (2⅛¢) per pound on the lead contained; but since December 26, 1941, the merchandise has been classified under par. 5 of the tariff act of 1930 as a mixture of chemical elements at 25% ad valorem.

Upon the foregoing stipulation *and official papers including the Government assay*, this protest is submitted for decision. [Italics ours.]

It is important that the Government assay, specifically referred to therein, be explained in detail as it appears in the submission papers, because its content, conceded to be correct, clearly supports the classification decided herein. It contains a laboratory report, No.

5466, dated Chicago, Ill., April 27, 1942, showing that the chief chemist regarded the sample as "a base bullion containing bismuth and 30.8% lead," and in the opinion of his office "classifiable under par. 392." The assistant collector replied to the chief chemist as follows: "It is very necessary to have a complete analysis in this case, as requested, as this mdse. will *not* be classified under par. 392." In a supplemental report filed on April 30, 1942, the chief chemist adhered to his previous finding, notwithstanding the veiled admonition of the assistant collector, and reported the merchandise to be "a *base bullion* containing Lead 30.8%, Bismuth 69.0%." [Italics ours.] This finding by the office of the chief chemist is uncontradicted evidence of a highly reliable character, and is much freer from doubt than any of the other stipulated facts.

The recent decision in the *Quong Yuen Shing Co.* case, *supra*, construed the provisions of paragraph 5, and held that the mixtures and combinations provided for in said paragraph included "only those mixtures which have constituent compounds, no one of which compounds is itself excluded from the paragraph by a specific provision for it elsewhere in the tariff act." The merchandise in question is composed in part of lead, which is specifically provided for in paragraph 392, as hereinabove set forth, and therefore, under the cited cases, is removed from classification under said paragraph 5. Defendant has recognized the effect of this decision and now concedes as erroneous the collector's classification of the present merchandise, contending that it is a nonenumerated manufactured article and as such subject to duty at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1558), one of the claims alleged by plaintiff. But before the provisions of said paragraph 1558 can be invoked, it must be determined that the commodity is not included within any of the enumerated provisions of the tariff act. *General Electric Co.* v. *United States*, 4 Ct. Cust. Appls. 398, T. D. 33839.

Since it is agreed that the instant merchandise is "wholly metallic and contains no mineralizer," it is therefore very definitely excluded from the provision for "metallic mineral substances," contemplated by paragraph 1664, *supra*. Accordingly, the claim for free entry thereunder is overruled.

The principal classification urged by plaintiff is under paragraph 392, *supra*, and the brief of counsel for defendant is devoted almost entirely against that claim. The discussion, however, is directed to a consideration of the provision for "all alloys or combinations of lead not specially provided for," it being contended that the latter is limited to alloys in chief value of lead, *United States* v. *Nassau Smelting & Refining Works, Ltd.*, 17 C. C. P. A. 382, T. D. 43821, and "the merchandise at bar, being in chief value of bismuth and

containing approximately 70 per centum of bismuth, is more a combination or alloy of bismuth than it is of lead, and being in chief value of bismuth, is therefore excluded from classification under paragraph 392." But no force or effect can be attributed to such contention in the light of the Government analyst's identification of the present merchandise, agreed to by the parties, as a base bullion, which fixes its classification under the *eo nomine* provision therefor in paragraph 392, *supra,* and dutiable on the basis of its lead content of 30.8 per centum, at the rate of 2⅛ cents per pound, as claimed.

We cannot ignore such *eo nomine* provision with a factual basis for the instant merchandise so definitely established, through agreement by both parties.

That the base bullion in question is not in chief value of lead, is no reason for excluding it from the specific provision for such merchandise in paragraph 392, *supra.* That proposition was settled in *United States* v. *Ayrton Metal Co., Inc.,* C. A. D. 221, which involved merchandise consisting of 46.3 per centum lead, 0.5 per centum antimony, and the remainder tin with not more than a trace of copper and zinc, tin being the component material of chief value. The court found the commodity to be solder and held it to be classifiable as such within the purview of said paragraph 392. In the course of its decision the court said that—

> * * * our expression in the *Nassau Smelting & Refining Works* case, *supra* [should not] be so interpreted as to exclude an article having a substantial lead content, and falling legitimately within the definition of solder, from paragraph 392, even though such lead content be not the ingredient of chief value. From the context of the paragraph itself we feel quite confident that the legislative intent was to the contrary.

With equal propriety that language is applicable here.

The protest is sustained and the decision of the collector is reversed. Judgment will be rendered accordingly.