**S. B. PENICK & CO.**

v.

**UNITED STATES.**

**C.D. 3105; Protest 64/25310-3554-63.**

United States Customs Court,
Third Division.

Sept. 5, 1967.

Barnes, Richardson & Colburn, New York City (E. Thomas Honey, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Glenn E. Harris and Steven R. Sosnov, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges, and DONLON, Senior Judge.

DONLON, Judge:

The merchandise at bar is described as Bulgarian peppermint leaves, rubbed, which were entered as a duty free vegetable substance, crude or unmanufactured, under paragraph 1722 of the Tariff Act of 1930. The collector classified the merchandise as a nonenumerated manufactured article, under paragraph 1558. Because the exporting country was Bulgaria, the importation was charged with duty at the unmodified rate of 20 percent *ad valorem.*

Plaintiff's protest claims the duty free entry classification.

The competing tariff provisions are as follows:

Paragraph 1558, Tariff Act of 1930, supra:

> That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Paragraph 1722, Tariff Act of 1930, as amended by Public Law 86–402, 74 Stat. 13 [Free List], supra:

> Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for; and seaweeds not further manufactured than ground, powdered, or granulated.

Certain facts either are not in controversy or are sufficiently shown by the proofs of record. These are that the merchandise is peppermint leaves, known botanically as *mentha piperita;* that the country of origin is Bulgaria; that the leaves are not whole leaves; that they are broken leaves, that is, what is known in the trade as "rubbed" leaves; and that whole leaves are more valuable than are the "rubbed" leaves, that is, whole leaves command a higher price in the market than do the "rubbed" leaves, which are regarded as an inferior article.

Plaintiff's witness had never been to Bulgaria, but he described the harvesting of *mentha piperita* as he had seen it in Italy, and he also described rubbing, a hand operation done by women on small farms. Defendant's witness described the harvesting of *mentha piperita* and rubbing in the United States, where larger scale farming utilizes machinery rather than hand labor, as in Italy. While this record is not conclusive as to which is the method of harvesting and rubbing practiced in Bulgaria, it is a matter of common knowledge (of which judges are not unaware) that agricultural operations in the Balkan countries are not as mechanized as in the United States. Rather, they are more primitive, relying on hand labor in harvesting operations and in the preparation of harvested crops for market.

The question is whether the broken peppermint leaves at bar are in a crude or unmanufactured state; or whether they have been, in a tariff sense, advanced so as to become a manufactured article.

In United States v. S. B. Penick & Co., 24 CCPA 436, T.D. 48901, the merchandise in litigation included peppermint leaves. The issue was whether these were dutiable as spices or were duty free under paragraph 1722 as a crude or unmanufactured vegetable substance, which is the same provision on which plaintiff here rests its claim. The opinion deals chiefly with the question whether, for tariff purposes, the peppermint leaves (and also tarragon and basil leaves and stems), dried and imported in large bales, are spices or vegetable substances. On that question, the decision was that they

are vegetable substances. As to whether they were crude or unmanufactured, the court said:

> The record is meager and not very satisfactory on this question. The samples are before us and they have the appearance of being merely dried leaves and stems. Said witness Curran was asked, "Are they all crude substances?" and his answer was, "They are." This is the only testimony or other fact except the sample which throws any light on the question. It seems that at the trial the crude or unmanufactured character of the importation was not seriously in question. No doubt, if asked, the witness would have stated upon what facts he based his conclusion. No objection was made to the testimony nor was further testimony concerning the crude character of the substances sought by either side. The trial court, upon the evidence, expressly held that the merchandise was crude and unmanufactured, and we are constrained to hold that in this particular the decision is not erroneous. [P. 441.]

This earlier *Penick* case, therefore, is not especially helpful to us in resolving the issue as to whether the record here supports plaintiff's claim that these peppermint leaves are crude or unmanufactured.

The testimony and the exhibits of record show that in the process of "rubbing", broken, or inferior, leaves and pieces are sorted, at the time of harvest, from the whole, or choice, leaves; that the broken leaves, after drying, are "rubbed", that is, crushed (either by hand or mechanically) and sieved, in order to remove at least part of the "impurities", that is, stems and flower heads; that after importation the rubbed leaves are still further sieved and cleaned, in order to remove impurities; that at the time of importation such impurities were noticeable, as shown by the exhibit of record; that the merchandise at bar is sold, after such processing, to health food houses which pack the rubbed leaves in tea bags; that rubbed leaves are less valuable than the whole leaves; and that, although the housewife or chef rubs, that is, crushes a whole leaf when using it in culinary processes, there is a market preference for whole leaves over the rubbed leaves.

There is no single satisfactory judicial yardstick by which to measure what, after some degree of processing, continues to be a crude or unmanufactured vegetable substance and what, in consequence of such processing, has become an article at least partly manufactured. In J. B. Henriques, Inc. v. United States, 46 CCPA 54, C.A.D. 695, often cited, our appeals court said that the "exact point in the processing of raw material at which it becomes a partly finished article or manufacture is a matter which must be determined on the basis of the circumstances of the particular case involved." (P. 56.) And, addressing itself to what the relevant circumstances might be:

> It is not possible from the authorities such as we have hereinbefore enumerated to formulate any general principle which can be universally applied. The decisions appear to have been made on the basis of an appraisal of the particular facts of the respective cases. They were obviously rendered in the light of such considerations, for example, as the extent of the changes made in the raw material; the amount of the work remaining to be done before a finished article could be produced; the similarity between the article as imported and the final product; and whether the work on the imported merchandise was done primarily to facilitate the shipping thereof or to advance the article toward completion. [P. 58.]

The only changes made in the raw material here are the breaking, or rubbing, and sieving to remove some, but not all, of the impurities. There was needed, for producing the finished article, peppermint tea bags, further sieving and cleaning. There is no evidence to indicate whether rubbing was done primarily

to facilitate shipping *or* to advance the article toward completion.

Two cases seem to us more nearly pertinent than the many others cited by the parties.

In a recent decision our appeals court considered whether a vegetable substance that had been broken and crushed was, nevertheless, crude or unmanufactured. United States v. Border Brokerage Co., C.A.D. 905.

The process to which the substance had been subjected was described by the trial court, as follows:

The cones are brought to a kiln which operates at temperatures of approximately 110–120 degrees Fahrenheit. In this process, the cones are heated, so that they open. They then go into a thrashing machine, which revolves fairly slowly. The cones go from the bottom of this machine to the top, and then drop down. This releases the seeds from the cones, and tears up the cone "so that you end up with a combination of seed and particles of the cone itself, and there's a little twig on the end of the cone which is in there also." There is no screening prior to importation, to separate the seeds from the other materials. [Border Brokerage Co. v. United States, 53 Cust.Ct. 53, at pp. 54, 55, C.D. 2472.]

In Fynaut & Popek v. United States, 23 CCPA 265, T.D. 48112, the product was chicory which had been partially processed abroad. The court said:

The next question for determination is whether or not the chicory here involved is in fact "crude," within the meaning of that word as used in said paragraph 776.

That the chicory here involved is in its natural state is, in view of our decision in the *Hothouse Products* case,* supra, conceded.

The meaning of the word "crude," as used in tariff laws, came before the United States Supreme Court in the case of Recknagel v. Murphy, 12 Otto 197; the question there involved was whether certain argols imported by appellant were free of duty as "argols crude," under section 22 of the act of July 14, 1870 (16 Stat. 266). The court said:

The lexical definition of *crude* is: "In its natural state; not cooked or prepared by fire or heat; undressed; not altered, refined, or prepared for use by any artificial process; raw." See Webster's Dic.

In the case of Ishimitsu Co. v. United States, 12 Ct.Cust.Appls. 477, T.D. 40672, the question involved was whether certain merchandise there in issue was a crude mineral substance. The court said:

* * * Crude implies that it is raw, unprepared or in its natural state. * * *

This court, however, has held that the term "crude," as used in tariff legislation, is a relative term, its meaning depending upon its use in the context. United States v. Richard & Co., 8 Ct. Cust.Appls. 304, T.D. 37583; United States v. Chili Products Corp., 23 C.C. P.A. (Customs) 209, T.D. 48052.

In accordance with the foregoing, we have repeatedly held that an article may be crude in a tariff sense, although it has undergone some processes advancing the article from its natural state, provided that such processes do not fit the article for its ultimate use. In the case of Togasaki & Co. et. al. v. United States, 12 Ct.Cust.Appls. 463, T.D. 40667, this court said:

The word "crude," has been defined so many times by the courts as to require but little citation of authority here. It has been held to mean, when applied to the name of anything, that this thing, however much it may be processed, if, as a matter of fact, it must go through some additional process of substantial preparation or manufacture in order to fit it for its chief or only use, is so far as that use is concerned,

---

* United States v. Hothouse Products Corp. et al., 21 CCPA 261, T.D. 46789.

a crude article. United States v. Danker & Marston (2 Ct.Cust.Appls. 522 [524]; T.D. 32251); United States v. American Chicle Co. (10 Ct.Cust.Appls. 98; T.D. 38360); United States v. Rice Co. (9 Ct.Cust. Appls. 165; T.D. 37998). * * *

It would appear from the decided cases that the meaning of the word "crude" has been somewhat enlarged from its common meaning as found in standard dictionaries, but we have found no case where the word has been given a *narrower* meaning than its ordinary common meaning. We find nothing in said paragraph 776 to lead us to conclude that Congress intended, in its enactment, that articles named therein, when in their natural state, should not be considered to be crude. [Pp. 269, 270 of 23 CCPA]

It suffices here to find either that these peppermint leaves are crude *or* unmanufactured, since Congress has used the disjunctive. We are of opinion that the crushing did not so alter these leaves that they should not be considered to be crude. It seems to us, moreover, that the breaking and partial sieving of an inferior residue of the peppermint leaf harvest, already somewhat broken, does not suffice to make these rubbed leaves into a partially or wholly manufactured article.

The protest claim is sustained. Judgment will be entered accordingly.

RICHARDSON, J., concurs.

CONCURRING OPINION

LANDIS, Judge:

I concur in the result of the majority on the basis that the rubbed peppermint leaves are crude vegetable substances under paragraph 1722 of the Tariff Act of 1930 and, therefore, entitled to come in free of duty. This was the extent of the holding of United Sttaes v. Border Brokerage Co., C.A.D. 905, and Fynaut & Popek v. United States, 23 CCPA 265, T.D. 48112, relied on principally by the majority.

As paragraph 1722 dealing with vegetable substances is more specific than paragraph 1558 referring to manufactured goods generally, there is no necessity to consider whether the leaves are articles manufactured in whole or in part, General Electric Co. v. United States, 4 Ct.Cust.Appls. 398, T.D. 33839; Floral Arts Studio et al. v. United States, 39 Cust.Ct. 287, C.D. 1943, affirmed Id. v. Id., 46 CCPA 21, C.A.D. 690; American Smelting & Refining Co. v. United States, 11 Cust.Ct. 134, C.D. 810, an issue over which there may be some doubt. I would limit the holding in this case to the determination that these articles were crude.