UNITED STATES v. SEWARD (No. 1922).[1]

1. CONSTRUCTION, PARAGRAPH 498, TARIFF ACT OF 1913—"SUCH AS."

The use of the expression "such as," in paragraph 498, tariff act of 1913, is as a similitude provision, classifying merchandise of the kinds named which is *like or similar* to those substances which "are commonly used in soap making or in wire drawing, or for stuffing or dressing leather."

---

[1] T. D. 37845 (35 Treas. Dec., 260).

2. CONSTRUCTION, PARAGRAPH 498, TARIFF ACT OF 1913—HISTORY OF PARAGRAPH AS GUIDE.

Paragraph 498, tariff act of 1913, eliminated from its predecessors in the acts of 1897 and 1909 (568 and 580) the words "and which are fit only for such uses." The purpose of this change was to broaden the scope of the provisions and include not alone those *solely* so used but also those *commonly* so used.

3. TEA OIL.

Tea oil, being shown to be not compounded, suitable for use in the soap and textile industries, and similar to commercial olive oil, which is shown to be commonly used in these industries, is classifiable accordingly under paragraph 498, tariff act of 1913.

## United States Court of Customs Appeals, November 26, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8167 (T. D. 37622).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

*Ely Neumann* for appellee.

[Oral argument Oct. 31, 1918, by Mr. Hanson and Mr. Neumann.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importation was of an expressed oil of tea seeds imported from China. The case is brought here upon the question of its proper classification for import duty purposes under the provisions of paragraph 498 of the free list of the tariff act of 1913, reading:

498. Grease, fats, vegetable tallow, and oils (excepting fish oils), not chemically compounded, such as are commonly used in soap making or in wire drawing, or for stuffing or dressing leather, not specially provided for in this section.

The predecessor paragraphs to this in the tariff acts of 1897 (par. 568) and 1909 (par. 580) were in essentially similar language, differing in that the words "not chemically compounded" were inserted for the first time in the act of 1913, and the words "and which are fit only for such uses," following the words "used in soap making or in wire drawing, or for stuffing or dressing leather," appeared as a part of both the former paragraphs and are omitted from paragraph 498 of the act of 1913.

The obvious reason for the latter change was to broaden the scope of said paragraph 498 and permit free entry thereunder of all oils otherwise within the language of the paragraph similiar not alone to those used solely in soap making or for wire drawing or for stuffing or dressing leather but also similar to those *commonly* though not solely used for any such enumerated purpose. Indeed, the elimination of this clause from the act of 1913 removed from the act an apparently inconsistent limitation upon these enumerations with

that previously expressed in the predecessor paragraphs, reading "commonly" used.

The employment of the words "such as" in a free-list provision of the tariff act as here written was the subject of consideration by this court in Frankfeld & Co. v. United States (7 Ct. Cust. Appls., 296; T. D. 36805), wherein we observed of their use in paragraph 477 of the act of 1913:

> While the terms of the similitude clause (par. 385) ex vi termini render it inapplicable to the free list, of which paragraph 477 is a member, yet the language of the latter expressly classes thereunder all "drugs, such as" those enumerated. There is, however, nothing in this record establishing, nor was it seriously contended at the hearing, nor is it in the briefs urged by appellants, that these importations are in any particular or particulars "such as" any one of the things specifically named in paragraph 477. Certainly the importations do not respond in fact to any one of these descriptions.

This view accords paragraph 498 the character of a similitude provision claiming those classes of importations alike or similar to greases, fats, oils, etc., which are "such as," alike or similar to such other substances as are commonly used in soap making, wire drawing, or stuffing or dressing leather. The construction of the paragraph being thus determined, the proof necessary to bring an importation therewithin becomes obvious: First, it must be shown that a certain substance is commonly used for one of the enumerated purposes; and then it must be further shown that the importation is "such as" or similar to that substance.

This record, however, presents a different state of facts from that therein before the court in Frankfeld & Co. v. United States, supra, wherein such proof was wanting. Herein the indicated proof is afforded by the record. A competent witness introduced by the importer, whose testimony was not contradicted but corroborated by the Government, testified:

> Q. Have you had occasion to make any investigation of the various uses of this oil?—A. Yes, in a general way. The oil is what we would term a soap oil or a commercial commodity such as commercial olive oil. *It behaves practically in all respects like the ordinary olive oil of commerce such as is used in the soap industry and in the textile industry.* * * *
>
> Q. From a chemical standpoint would you say that this oil is fit for soap making and textile purposes and not for edible purposes?— * * * A. The oil is suitable for the manufacture of soap and well adapted to use for the textile industry.
>
> *       *       *       *       *       *       *
>
> Q. Your work has entirely related to this commodity from a chemical standpoint, has it not?—A. No, it has not. My work has essentially been from a practical standpoint, because in the various positions, and in instances where I have been called upon I had to determine the adaptability of certain oils for certain products, so it became necessary for me to investigate the processes of manufacture or how they were used or how they were combined with other material, and then to see how they would apply.

An analysis by the same chemist introduced as a part of the record reports the article as "*pure* tea oil," and that "it behaves in practically all respects very similar to olive oil." These adduced facts were corroborated by the special report of the local appraiser.

The same witness further testified:

Q. Now, Doctor, have you had any prior experience with tea seed oil, prior to this importation?—A. Why, some seven years ago I had some tea seed oil and did some experimental work on it in a refining way, and since then I have examined samples from time to time, and about three years ago I made quite a little investigation on tea oil, used in a paper I presented to the American Chemical Society, I think about a year ago.

Q. Did that investigation and research deal with the edibility of the tea seed oil?—A. It dealt with a general examination of the oil, a general comparison of the oil as to how about it would compare with various other oils.

Q. What would you say as to whether or not the importation here in question is an edible oil?—* * * A. I have examined this oil and tried in the past to refine it and make it suitable for edible purposes; I have also in the past manufactured edible oils that were put on the market in cans used by the ordinary housewife, and notwithstanding the fact that I had considerable experience, I was unable to refine this oil. The oil has to it certain characteristics, has a peculiar taste and odor, that even by the most harsh methods it is practically impossible to remove it. You can reduce the acidity, but it is almost impossible to remove that "hamy" odor, that "hamy" taste.

Q. Do you know how the oil happens to have that hamy taste and smell—just yes or no?—A. Yes.

Q. Will you please state how it gets that taste and smell?—A. It is customary to dry practically all these seeds prior to pressing over a wood fire, and the smell of the wood impregnates the seed with a characteristic and peculiar odor such as we get in our hams.

The Board of General Appraisers sustained the protest and we find ample testimony in the record to support that action. The importation was a "pure," therefore not compounded, oil, is non-edible, therefore of a commercial quality only, and was of a kind used for soap making and textile purposes such as commercial olive oil. It was therefore entitled to free entry under the provisions of paragraph 498 of the act of 1913, as claimed and held by the board.

*Affirmed.*