The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* NICHOLS COPPER Co. (No. 4367)[1]

[1] C. A. D. 190.

United States Court of Customs and Patent Appeals,
December 29, 1941

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.
*Jerome G. Clifford* (*George W. Israel,* of counsel) for appellee.
*James L. Gerry, amicus curiae.*

[Oral argument December 4, 1941, by Mr. FitzGibbon and Mr. Israel]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal is from a judgment of the United States Customs Court (Second Division) involving the classification of certain merchandise imported at the port of New York in 1936. It was invoiced as "bulk silver ores" and was classified by the collector under paragraph 393 of the Tariff Act of 1930 and assessed with duty at the rate of 1½ cents per pound upon the zinc contained therein. It is conceded by appellee that the merchandise has a zinc content of 10 per centum.

Appellee (importer) protested such classification, claiming the merchandise to be free of duty under paragraph 1664 of said act as "metallic mineral substances in a crude state." Another claim was made in the protest, which claim was not urged before the trial court or before us, and we assume that claim was abandoned by appellee.

With the permission of the court James L. Gerry, Esq., was permitted to file a brief as *amicus curiae.*

The paragraphs of said tariff act here involved read as follows:

PAR. 393. Zinc-bearing ores of all kinds, except pyrites containing not more than 3 per centum zinc, 1½ cents per pound on the zinc contained therein: * * *.

188

PAR. 1664. Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for.

On the trial before the Customs Court the only question of fact litigated was whether the involved merchandise was an "ore" within the common meaning of that term.

Analyses of samples of the merchandise were introduced in evidence by appellee which showed the material to be composed of approximately 60 per centum silica, 33 ounces of silver and .16 of an ounce of gold per ton, together with other substances not important here. While said analyses do not show the percentage of zinc in the merchandise, appellee, as hereinbefore stated, conceded that the determination by the collector that the merchandise had a zinc content of 10 per centum was correct.

Upon the first hearing before the Customs Court appellee introduced the testimony of two witnesses, employees of appellee. The Government introduced no evidence. Such testimony shows that the involved merchandise was used in a copper smelter operated by appellee. Appellee's witness Carlton S. Harloff testified in part as follows:

Q. For what purpose is the instant merchandise used?—A. It is used as a flux to balance the charge against the iron content; the excess iron contained in the other charged materials.

Q. How does the material emerge from the furnace after it has been heated to the proper temperature?—A. In a fluid state.

Q. Is that the object of introducing this fluxing material?—A. The flux aids in balancing the charge, to make it easily smelted at a lower temperature.

Q. Did you recover any zinc from this particular merchandise?—A. No.

Appellee's witness Philip B. Scott testified that appellee paid $18.25 per ton for the merchandise and that, after it had been used as a flux, silver and gold to the extent of $21 per ton were recovered therefrom. The witness further testified as follows:

Judge DALLINGER. As I understand you to say, you paid $18.00 per ton for this and recovered $21.00 silver and gold.

By Mr. ISRAEL.

Q. Does that take into consideration your plant cost of smelting each ton?—A. No.

Q. How much is this?—A. Our plant cost is $7.31.

Q. Per ton?—A. Yes.

Q. Which makes a net loss of how much on each ton?—A. A net loss of $4.56.

Q. In other words, if you were merely smelting this ore that you have, without any other ores—rather, if you were smelting this particular flux, you would sustain a loss on the transaction, is that correct? —A. We don't smelt this material. You can't smelt this material all by itself.

Q. But your plant cost per ton on this material shows a loss of $4.56?—A. Yes.

The case was submitted to the Customs Court on the evidence introduced as aforesaid. The court rendered a decision overruling appellee's protest upon the ground that the evidence showed that the involved merchandise was a zinc-bearing ore.

Upon motion of appellee a rehearing "for all purposes" was granted.

Upon the rehearing appellee introduced the testimony of three additional witnesses, all of which was directed to the question of whether the involved merchandise was an ore, appellee contending that it was not because the metallic content thereof could not be profitably extracted.

Again the Government introduced no evidence, and the cause was again submitted to the court.

Upon this resubmission the court sustained the protest of appellee, holding that the involved merchandise was not a zinc-bearing ore within the meaning of paragraph 393, but that it was a metallic mineral substance in a crude state and free of duty under paragraph 1664. Judgment was entered accordingly and the Government has taken this appeal therefrom.

After the entry of said judgment the Government made application for a rehearing, which was denied. In its application for rehearing the Government urged that the involved merchandise was not *ejusdem generis* with the substances specifically named in said paragraph 1664.

While the parties have argued at length the question of whether the involved merchandise was an ore within the common meaning of that word, we do not find it necessary to consider that question because, assuming that it was not such, but was a metallic mineral substance in a crude state as claimed by appellee, it was not within the class of substances classifiable under paragraph 1664.

Paragraph 1664 clearly does not include *all* metallic mineral substances in a crude state, but only those "such as drosses, skimmings, residues, brass foundry ash, and flue dust" containing metal.

The case of *Alpha Lux Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 162, C. A. D. 79, relied upon by appellee, involved the question of the applicability of said paragraph 1664 to the merchandise there involved, which consisted of bauxite residue resulting from the extraction of aluminum from crude bauxite ore. We held that it was established that the imported merchandise there involved was not a metallic mineral substance, nor derived from a metallic mineral substance. If it had contained metal as such, it would clearly have been classifiable under said paragraph 1664 as a residue.

In our opinion in said cited case we stated:

Paragraph 1664 of the present act provides for the admission, duty free, of crude metallic mineral substances. These substances are illustratively enumerated. The involved merchandise is not a metallic mineral substance nor is it derived from a metallic mineral substance.

* * * * * * *

There are several mineral substances (ores) in which metal, as such, is found. Congress, however, did not provide in paragraph 1664, *supra*, for all crude mineral substances. Out of all crude mineral substances it carved for the free list crude metallic mineral substances.

A review of the scientific authorities reveals that bauxite is not a metallic mineral substance but is a mineral containing chemical elements which must be processed in order that a metal may be produced. It is obvious, therefore, that bauxite is a mineral containing chemical elements rather than a metallic mineral substance. * * *

After quoting from the decision of the Customs Court in the case above cited and from our opinion therein, *amicus curiae* in his brief states:

These decisions must, therefore, mean that Par. 1664 has force and effect as to crude metallic mineral substances in a state of nature, and further that the purpose and intent of Congress was to see to it that the effect of the primary clause of Par. 1664 was to continue with force and effect, and that the words "such as drosses, etc." were words of extension.

The doctrine of *ejusdem generis* cannot be applied without overruling the *Alpha Lux* case. * * *

The distinction between that case and the case at bar is apparent. In the cited case the question was whether the merchandise there involved was a crude mineral substance and classifiable under paragraph 1664 as a "residue," while in the case at bar the question is whether a metallic mineral substance in a crude state, but not a substance such as the substances specifically enumerated in paragraph 1664, is classifiable thereunder.

In other words, our decision in the *Alpha Lux* case, *supra*, can have no bearing upon our decision in the case at bar, for the question here to be determined was not involved in that case.

It is true that we used some general language which, if necessary to a decision in that case, would be pertinent here. To illustrate, in the above quotation from our decision in that case we said: "Congress, however, did not provide in paragraph 1664, *supra*, for all crude mineral substances. Out of all crude mineral substances it carved for the free list crude metallic mineral substances."

We also stated, as hereinbefore quoted, that "Paragraph 1664 of the present act provides for the admission, duty free, of crude metallic mineral substances. These substances are illustratively enumerated."

It would, of course, have been more accurate to have stated that Congress in paragraph 1664 provided for the admission, duty free, of *certain* crude metallic mineral substances, which are illustratively enumerated; but as the only question before us was whether the involved merchandise was a crude metallic mineral substance, preciseness of language not affecting the issue was not observed.

In this connection we quote from a decision on the patent side of our jurisdiction, which is applicable here. In the case of *Conover* v. *Downs*, 17 C. C. P. A. (Patents) 587, 35 F. (2d) 59, we said:

* * * Undue liberties should not be taken with the language in a court decision. Rather it should be construed and applied in accordance with the precise issue before the court. If this course is followed, much useless litigation may be avoided.

We held in the *Alpha Lux* case, *supra*, that paragraph 1664 is clear and unambiguous, and we here affirm that holding.

Appellee's brief states that if Congress had intended in paragraph 1664 to provide for the substances named or like substances, it could have accomplished this intention by the omission of the words "metallic mineral substances in a crude state," and that under the construction contended for by the Government the clause "metallic mineral substances in a crude state" is meaningless. In this appellee is in error. In the *Alpha Lux* case, *supra*, we held that all substances such as those specifically named in the paragraph, in order to be classifiable thereunder, must contain metal as such. This gives full scope and meaning to all the words of the paragraph.

We have held that the term "crude" as used in tariff legislation is a relative term, its meaning depending upon its use in the context. *Fynaut & Popek* v. *United States*, 23 C. C. P. A. (Customs) 265, T. D. 48112. In the case of *Togasaki & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 463, T. D. 40667, this court stated:

The word "crude," has been defined so many times by the courts as to require but little citation of authority here. It has been held to mean, when applied to the name of anything, that this thing, however much it may be processed, if, as a matter of fact, it must go through some additional process of substantial preparation or manufacture in order to fit it for its chief or only use, is, so far as that use is concerned, a crude article.—United States v. Danker & Marston (2 Ct. Cust. Appls. 522 [524]; T. D. 32251); United States v. American Chicle Co. (10 Ct. Cust. Appls. 98; T. D. 38360); United States v. Rice Co. (9 Ct. Cust. Appls. 165; T. D. 37998). * * *

We have no hesitation in holding that the context of paragraph 1664 clearly shows that Congress intended that substances such as those which are specifically named in paragraph 1664, containing metallic mineral, should be regarded as crude metallic mineral substances.

There is no contention here that the merchandise involved is *ejusdem generis* with the substances specifically named in paragraph 1664. We do not apply the doctrine of *ejusdem generis* as a rule of construction, but by the use of the words "such as" in the paragraph we are required to determine whether a substance not specifically named in the paragraph is like or similar to, or belongs to the same class as, the substances therein named. See *Comey & Johnson Co.* v. *United States*, 4 Ct. Cust. Appls. 285, T. D. 33493; *Frankfeld & Co.* v. *United States*, 7 Ct. Cust. Appls. 296, T. D. 36805; *United States* v. *Seward*, 9 Ct. Cust. Appls. 18, T. D. 37845; *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050.

Inasmuch as the involved merchandise is neither *eo nomine* provided for in paragraph 1664, nor is it *ejusdem generis* with the substances named therein, it is immaterial whether it be an ore within the meaning

of paragraph 393, as classified by the collector, and it is not necessary for us to pass upon the correctness of his classification. Hence we express no opinion upon the holding of the trial court that the involved merchandise is not an ore.

It was the duty of appellee, not only to show that the collector was wrong, but to point out and claim the paragraph under which the merchandise should be classified. This is so elementary that no citation of authority is necessary.

Inasmuch as we must hold that, for the reasons hereinbefore stated, the merchandise is not free of duty under paragraph 1664, as claimed by appellee, and no other claim having been made and urged by it, the protest of appellee should have been overruled by the trial court. The judgment appealed from is *reversed*.